# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
             **Plaintiff,**

**v.**                                              **Case No. 07-CR-119**

**YAWNG WU**
                      **Defendant.**

---

## SENTENCING MEMORANDUM

Defendant Yawng Wu pleaded guilty to bank fraud arising out of his participation in a scheme to pass bad checks at banks in several states. The probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing, which set defendant's offense level at 18 (base level 7, U.S.S.G. § 2B1.1(a)(1), plus 10 for loss amount, § 2B1.1(b)(1)(F), plus 2 because the offense victimized 10 or more banks, § 2B1.1(b)(2)(A)(i), plus 2 because defendant re-located the scheme to another jurisdiction to evade law enforcement, § 2B1.1(b)(9)(A), and minus 3 for acceptance of responsibility, § 3E1.1). Coupled with defendant's criminal history category of I, the PSR recommended an imprisonment range of 27-33 months under the advisory sentencing guidelines. Neither side objected to the PSR's guideline calculations, which I adopted.

The government advocated a sentence at the low end of the range, while defendant requested a non-guideline sentence of 15 months. Upon consideration of all of the factors set forth in 18 U.S.C. § 3553(a), I imposed a sentence of 18 months imprisonment, followed by five years of supervised release with various special financial conditions. This memorandum sets forth the reasons for the sentence imposed. See 18 U.S.C. § 3553(c).

## I.  SENTENCING PROCEDURE

In imposing sentence, the district court must first calculate the advisory guideline range, then select an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See Gall v. United States, 128 S. Ct. 586, 596 (2007); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007).  The § 3553(a) factors include:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant.  Id. Although the district court must consider the guidelines in making this determination, it may not

2

presume that the guideline sentence is the correct one. <u>Rita v. United States</u>, 127 S. Ct. 2456, 2465 (2007); <u>United States v. Demaree</u>, 459 F.3d 791, 794-95 (7th Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 3055 (2007). Rather, after accurately calculating the advisory range so that it "can derive whatever insight the guidelines have to offer, [the district court] must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." <u>United States v. Sachsenmaier</u>, 491 F.3d 680, 685 (7th Cir. 2007).

## II. DISCUSSION

### A. Nature of Offense

A man named Neng Yang Vang devised a scheme pursuant to which he and others he had recruited traveled throughout the United States opening bank accounts with fraudulent checks drawn on closed accounts, receiving part of the checks back in cash. Vang and his cohorts would then leave town, leaving the banks with a loss in the form of the disbursed cash.

Vang commenced the scheme in August 2004, and defendant joined in early 2006. The scheme came to light in May 2007, when police arrested Vang, defendant and another co-actor trying to negotiate two fraudulent checks in South Milwaukee, Wisconsin. Subsequent investigation revealed that the three had passed other bad checks around the Milwaukee area, and that they had traveled here from California for purposes of executing Vang's scheme. In a post-arrest statement, defendant admitted traveling to various states in execution of the scheme. The FBI's investigation ultimately revealed that Vang passed nearly $350,000 in bad checks, himself and in concert with others. Defendant issued or negotiated about 182 checks, worth over $155,000.[1]

---

[1]The actual loss to the banks appeared to be about half that, but the Seventh Circuit has held that in schemes such as this one it is proper to use the total amount of fraudulent deposits

3

**B.     Character of Defendant**

Defendant was thirty-nine years old and had no prior record.  Born in Laos during the Vietnam War, he endured a difficult childhood.  He came to the United States in 1990 and became a citizen in 2002, but spoke relatively little English.  He married in Laos in 2004, and his wife remained in that country; they apparently had no contact since March 2007.  Defendant compiled some employment record in this country, working for Tyson Foods for two years and Shuford Mills for about 1 ½ years.  He appeared to have no substance abuse issues or other correctional treatment needs.

**C.     Purposes of Sentencing and Guidelines**

The guidelines called for a term of 27-33 months, but under all of the circumstances I concluded that a sentence somewhat below that range would be sufficient to satisfy the purposes of sentencing.  Given his lack of record, unsophisticated nature and limited ability to communicate in English, I did not see defendant as a threat to re-offend.  Vang devised this scheme, and defendant acted at his direction.  Thus, the public did not need to be protected from him for the length of time recommended by the guidelines.  See 18 U.S.C. § 3553(a)(2)(C).

I also saw no need for a lengthy prison term to deter defendant from re-offending, as he had never been in jail before.  See 18 U.S.C. § 3553(a)(2)(B).  "Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration

---

to calculate intended loss under U.S.S.G. § 2B1.1(b)(1), which relies on the greater of actual or intended loss.  See, e.g., United States v. Sykes, 357 F.3d 672, 675 (7th Cir. 2004) (collecting cases).  Thus, I based defendant's guideline loss figure on the total amount of the checks he deposited, not the amount of cash he received from the banks.  Nevertheless, I considered the actual loss to the banks and defendant's personal gain in determining an appropriate sentence under § 3553(a).

4

than is necessary to deter a defendant who has already served serious time yet continues to re-offend." <u>United States v. Qualls</u>, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).

Some period of confinement was needed to provide just punishment and deter others, given the length of time the scheme existed and the amounts involved. <u>See</u> 18 U.S.C. § 3553(a)(2)(A) & (B). However, a prison term below the range nevertheless provided just punishment given the fact that this was not defendant's scheme, and he profited little in comparison to the loss amount under the guidelines. The actual loss to the banks, while not definitively determined at the time of sentencing, was significantly less than the $155,000 intended loss under the guidelines,[2] and defendant stated, without contradiction, that he personally profited only about $12,000. Further, defendant's limited ability to communicate in English, and the uncommonness of his native language, Hmong, would in all likelihood substantially reduce his opportunities for programming or recreation within the Bureau of Prisons. A prison sentence would thus be harder for him than for someone who spoke English or a more common language.

Finally, I noted that defendant's ability to make restitution, a factor I had to consider under § 3553(a)(7), would be greater in the community than in prison. During his allocution, defendant indicated that he was eager to repay the banks from which he had stolen, and his employment record suggested that he could find and maintain a job. <u>See</u> <u>United States v. Peterson</u>, 363 F. Supp. 2d 1060, 1062 (E.D. Wis. 2005) (imposing non-guideline sentence in order to enhance the defendant's ability to make restitution under § 3553(a)(7)).

---

[2]Because the actual loss to the banks had not been definitively determined at the time of sentencing, I deferred the restitution decision for a period of 90 days under 18 U.S.C. § 3664(d)(5). However, based on the preliminary figures in the PSR, the actual loss appeared to be about ½ of the intended loss.

5

Under all of these circumstances, I found a sentence of 18 months sufficient but not greater than necessary. This sentence varied from the guidelines by only about 3 levels and was based on the particular facts of the case, so it did not create unwarranted disparity. See 18 U.S.C. § 3553(a)(6).

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 18 months followed by five years of supervised release with strict financial conditions. I selected the maximum supervision term to ensure that defendant was monitored, maintained legitimate employment and made restitution. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 29th day of February, 2008.

/s Lynn Adelman

_____

LYNN ADELMAN
District Judge

6